FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2014 JAN 22 AM 11: 12
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | | |
|---|---|---|
| FRANKIE LEE MCCLENDON, | ) | |
| Plaintiff, | ) | |
| v. | ) | CV 312-109 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Frankie Lee McClendon ("Plaintiff") appeals the decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

I. **BACKGROUND**

Plaintiff protectively applied for SSI on January 23, 2009, alleging a disability onset date of January 13, 2009. Tr. ("R."), pp. 79, 170, 209, 242. The Social Security Administration denied Plaintiff's application initially, R. 83-86, and on reconsideration, R. 90-93. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R.

94-97, and the ALJ held a hearing on October 27, 2010. R. 52-72. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from James Waddington, a Vocational Expert ("VE"). Id. The ALJ determined that a consultative evaluation was needed, and thus he held a second hearing on June 15, 2011 following such evaluation. R. 34-51. At the second hearing, the ALJ heard testimony from VE Tina Baker-Ivey. Id. On August 10, 2011, the ALJ issued an unfavorable decision. R. 17-33.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since January 23, 2009, the application date (20 C.F.R. §§ 416.971 *et seq.*).

2. The claimant has the following severe impairments: coronary artery disease with four coronary artery bypass grafts (CABG x4), hypertension, congestive heart failure, atrial fibrillation – all aggravated by 30 years' worth of tobacco abuse; and traumatic degenerative joint disease of the left knee (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform a wide range of light/medium work[1] as defined in 20 C.F.R. § 416.967(c) with the following exceptions. The claimant can lift or carry thirty pounds and frequently use foot controls for pushing or pulling. The claimant can sit for six hours of an eight-hour day and sit for up to three hours at a time. The claimant can stand or walk for three hours of an eight-hour day, for twenty to sixty minutes at a time. The claimant cannot crawl, crouch, kneel; or climb ladders, ropes, and scaffolds. The claimant can occasionally drive a motor vehicle, stoop, or climb ramps and stairs. The claimant cannot perform overhead reaching with either hand, but can frequently

---

[1] "Medium work" is defined as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

2

reach in other directions, as well as perform fine and gross manipulations. The claimant can tolerate walking on rough or uneven terrain for no more than one block, and can only occasionally work on heavily vibrating surfaces, or with vibrating machinery. The claimant cannot tolerate concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases and poor ventilation; or extreme temperatures and humidity. The claimant must not be exposed to dangerous moving machinery, unprotected heights, or noisy environments, such as around a jackhammer, but ordinary noise is acceptable. The claimant is unable to perform any past relevant work (20 C.F.R. § 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969 and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from January 23, 2009 through August 10, 2011 (the date of the ALJ's decision).

R. 22-27.

When the Appeals Council denied Plaintiff's request for review on November 1, 2012, R. 1-3, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ erred by (1) failing to properly evaluate two physicians' opinions; (2) failing to properly evaluate the medical evidence; and (3) finding that jobs exist in the national economy that Plaintiff can perform. (See doc. no. 12 ("Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff's application is supported by substantial evidence and should therefore be affirmed. (See doc. no. 13 ("Comm'r's Br.").)

II. **STANDARD OF REVIEW**

Judicial review of social security cases is narrow and limited to the following

questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her

conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. The Legal Standard for Evaluating Physician Opinions and Other Medical Evidence.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford, 363 F.3d at 1159 (ruling that the ALJ must accord substantial or considerable weight to the opinion of a treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (*per curiam*) (same). The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical

5

record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding her daily activities). Furthermore, under Social Security Ruling ("SSR") 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p; see also 20 C.F.R. § 416.927(d).

Although a treating physician's opinion must generally be given substantial weight, the same is not true of a consultative physician. As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160-61 (11th Cir. 2004) (*per curiam*). In particular, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 416.927(c)(1)-(2), (5).

Moreover, the ALJ has a duty to develop the facts of the case fully and fairly. Todd v. Heckler, 736 F.2d 641, 642 (11th Cir. 1984) (citing Ford v. Sec'y of Health and Human Serv., 659 F.2d 66, 69 (5th Cir. 1981)). As part of that duty, the ALJ must "make clear the weight accorded to the various testimony considered." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). Specifically, the ALJ is required to "state specifically the weight

accorded to each item of evidence and why he reached that decision" since, "in the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Id.

However, the Eleventh Circuit has clarified "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the Court] to conclude that the ALJ considered [his] medical condition as a whole.'" Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995)) (punctuation omitted); see also McCray v. Massanari, 175 F. Supp. 2d 1329, 1336 (M.D. Ala. 2001) ("[A]n ALJ is not required to discuss every piece of evidence submitted." (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998))).

### 1. The ALJ Properly Evaluated and Discredited Dr. Jackson's Medical Opinion.

Here, Plaintiff asserts the ALJ did not show good cause for disregarding Dr. Charles Jackson's opinions. In June 2010, Dr. Jackson opined that Plaintiff could not walk a block without stopping, was unable to lift more than ten pounds, and was totally and permanently disabled. R. 434-35. Dr. Jackson also submitted a Cardiac Residual Functional Capacity Questionnaire in September 2010, in which he opined Plaintiff could not lift even ten pounds, and further identified sitting, standing, lifting, positional, and environmental restrictions that would limit Plaintiff to less than sedentary work. R. 436-43. In his April 2011 opinion, Dr. Jackson again opined that Plaintiff was totally and permanently disabled, and further stated that his high school education precluded sedentary employment. R. 472. The ALJ assigned the opinions little weight because (1) under SSR

7

96-5p, Dr. Jackson's opinion that Plaintiff was totally and permanently disabled is a determination reserved for the Commissioner, (2) Dr. Jackson's assumption that Plaintiff could not perform sedentary work due to his high school education was false, and (3) Plaintiff's own statements regarding his ability to function contradicted Dr. Jackson's opinion that Plaintiff could not even lift ten pounds. R. 25.

Plaintiff argues the ALJ merely pointed to Dr. Jackson's conclusory statements that Plaintiff was disabled, explained that such determination is reserved for the Commissioner, and then improperly disregarded the remainder of his opinions without further analysis. Pl.'s Br., pp. 15-17. Contrary to Plaintiff's assertion, the ALJ stated sufficient reasons for discounting Dr. Jackson's opinions.

First, the ALJ correctly rejected Dr. Jackson's unfounded statement in his April 2011 opinion that Plaintiff's high school education precluded him from performing sedentary work. R. 25, 472. Dr. Jackson clearly exceeded the bounds of his expertise by making this statement. Like his conclusory statements that Plaintiff is totally and permanently disabled, this opinion is entitled to no deference because it is an administrative finding reserved for the Commissioner. See 20 C.F.R. § 416.927(d); SSR 96-5p. The ALJ also rejected Dr. Jackson's September 2010 opinion that Plaintiff could not even lift ten pounds because it is inconsistent with Plaintiff's own statements that he could lift and carry up to twenty pounds, and that he routinely performed housework that suggested he could lift more than ten pounds. R. 23-25, 58-59, 259, 440. It is also inconsistent with Dr. Wallace's findings that Plaintiff could carry up to twenty pounds and lift up to fifty, which the ALJ used in determining that Plaintiff could lift or carry thirty pounds, and Dr.

Jackson's own opinion in June 2010 that Plaintiff could lift up to ten pounds. R. 25, 434-35.

As to Plaintiff's argument that the ALJ should have individually discussed each of Dr. Jackson's opinions, the ALJ is not required to address each individual opinion, provided his analysis does not amount to a broad rejection. Dyer, 395 F.3d at 1211. Here, the ALJ assessed Dr. Jackson's June 2010, September 2010, and April 2011 opinions, and provided specific reasons for giving them little weight. Therefore his decision to discredit them is supported by substantial evidence. Cowart, 662 F.2d at 735. In sum, the ALJ showed good cause to discredit Dr. Jackson's opinions, and his rejection of them was proper. Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583-84; Syrock, 764 F.2d at 835.

## 2. The ALJ Properly Evaluated Dr. Wallace's Medical Opinion.

Plaintiff also claims the ALJ erred by failing to properly evaluate and specify the weight given to the consultative examining opinion of Dr. Stanley Wallace. In a December 2010 Medical Source Statement, Dr. Wallace opined restrictions on Plaintiff's lifting, carrying, sitting, standing, walking, use of hands and feet, and posturals, and identified environmental restrictions. R. 460-65. He also stated that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces. R. 465. The ALJ acknowledged Dr. Wallace's opined limitations in his discussion of the medical evidence, and incorporated nearly all of them into his RFC. R. 22, 25. The ALJ observed that Dr. Wallace "further opined that the claimant's cardiac problem did not result in significant impairment of normal function. In fact, he pointed out that the claimant could occasionally carry up to 20 pounds and lift up to 50 pounds." R. 25. In light of Dr. Wallace's findings, the ALJ

9

proceeded to address Plaintiff counsel's argument that such findings limit Plaintiff to sedentary work. Id.

Plaintiff asserts the ALJ only explained why he disagreed with Plaintiff's counsel as to the interpretation of Dr. Wallace's opinion, but "failed to explain how he treated this opinion." Pl.'s Br., p. 17. Plaintiff further argues that because the ALJ failed to state the specific weight he gave to Dr. Wallace's opinion, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Id. (quoting Cowart, 662 F.2d at 735). However, an ALJ may implicitly make a finding that evidence was entitled to great weight where the ALJ relies on and references such evidence throughout the decision. Kemp v. Astrue, 308 F. App'x 423, 426 (11th Cir. 2009) (*per curiam*) (citing Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986).

Here, the Court finds the ALJ fully analyzed Dr. Wallace's opinion, and in fact relied heavily upon it in making his disability determination. In addition to the ALJ's discussion of the appropriate interpretation of Dr. Wallace's findings, his RFC determination is comprised predominantly of Dr. Wallace's opined restrictions. See R. 22-23, 461-64. The ALJ adopted Dr. Wallace's opinion as to use of foot controls, his limitations on sitting, standing and walking, and posturals, and his environmental restrictions. Id. The ALJ deviated from Dr. Wallace's limitations as to Plaintiff's use of hands, but in doing so actually added a restriction on overhead reaching. R. 22, 462. The ALJ also relied on Dr. Wallace's opined limitations on lifting and carrying, and supported his finding that Plaintiff could lift and carry thirty pounds frequently by noting that Dr.

Wallace "pointed out that the claimant could occasionally carry up to 20 pounds and lift up to 50 pounds." R. 25, 460.

Given the ALJ's reliance on Dr. Wallace's findings in determining Plaintiff's RFC, he implicitly found that Dr. Wallace's opinion was entitled to great weight. Kemp, 308 F. App'x at 426. Moreover, as Dr. Wallace's opined limitations were incorporated into the ALJ's RFC determination, the omission of an explicit assignment of weight did not alter the outcome and was harmless. See Wright v. Barnhart, 153 F. App'x 678, 684 (11th Cir. 2005) (*per curiam*) (noting that "when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decisions will stand").

Plaintiff argues the ALJ ignored Dr. Wallace's limitations on standing and walking. Pl.'s Br., p. 17. However, the ALJ's standing and walking limitations are generally consistent with Dr. Wallace's findings. Dr. Wallace separated the two functions, finding that Plaintiff could walk for twenty minutes at a time and stand for one hour, and that he could walk for two hours total in a work day and stand for one. R. 461. The ALJ simply combined them, leading to his finding that Plaintiff could stand/walk no more than twenty to sixty minutes at a time and no more than three hours total in a work day. R. 22. Thus, the ALJ's treatment of Dr. Wallace's opinion provides no basis for remand.

### 3. The ALJ Properly Evaluated the Medical Evidence of Record in Determining Plaintiff's RFC.

Plaintiff asserts the ALJ failed to properly assess his RFC in light of the evidence, resulting in an erroneous determination that he could perform light work. Plaintiff bases his assertion primarily on his argument that the ALJ's RFC assessment was flawed due to

11

his failure to properly evaluate Dr. Jackson's and Dr. Wallace's opinions. Pl.'s Br., pp. 18-19. However, as stated <u>supra</u> Part III.A.1&2, the ALJ did not err in his evaluation of either opinion.

Plaintiff also argues the ALJ failed to adequately explain his reasons for rejecting the argument that Plaintiff is limited to sedentary work. Pl.'s Br., p. 19. However, the ALJ directly and thoroughly addressed this argument in his decision, stating that Plaintiff's testimony as to his daily activities contradicted the limitations opined by Dr. Wallace, and that there were no additional limitations not included in the RFC that warranted a limitation to sedentary work. R. 25. The ALJ specifically noted that, contrary to Plaintiff's argument, heat, cold, and humidity restrictions were all included in the RFC, and Plaintiff reported no side effects from medications. R. 25. Therefore, because the ALJ properly evaluated the evidence of record in determining Plaintiff's RFC, and his determination is supported by substantial evidence, this issue provides no basis for remand. <u>Barron</u>, 924 F.2d at 230.

### B. The ALJ Properly Found that Jobs Exist in the National Economy in Significant Numbers that Plaintiff Can Perform.

Plaintiff argues the Commissioner failed at step five to meet her burden of proving that jobs exist in the national economy he can perform. Once the claimant proves that he cannot return to his past relevant work, the burden shifts to the Commissioner to show that the claimant can perform other jobs that are significant in number in the national economy, considering age, education, and work experience. <u>Gibson v. Heckler</u>, 762 F.2d 1516, 1518-19 (11th Cir. 1985). The burden is on the ALJ to provide evidence about the existence of other work in the national economy that a claimant can perform. <u>Reeves v. Heckler</u>, 734

F.2d 519, 525 (11th Cir. 1984); see also 20 C.F.R. §§ 416.912(f) & 416.920(g). The ALJ may satisfy this burden and provide this evidence through a VE's testimony. Phillips, 357 F.3d at 1240; see also 20 C.F.R. § 416.966(e). In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. Phillips, 357 F.3d at 1240 n.7. Further, the ALJ must articulate specific jobs that exist in national economy that a claimant can perform. Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989). A claimant must show that she could not perform those jobs in order to prove disability. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country. 20 C.F.R. § 416.966(a). The ALJ, relying on the VE's testimony, and not the VE, determines whether a specific number of jobs constitutes a significant number. Brooks v. Barnhart, 133 F. App'x 669, 670 (11th Cir. 2005) (per curiam). The Eleventh Circuit has upheld an ALJ's finding that 840 polisher jobs in the national economy established the existence of jobs in significant numbers. Brooks, 133 F. App'x at 671; see also Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (holding that 174 positions in the area where the claimant resided, as well as 1,600 in claimant's state and 80,000 in the national economy, established the existence of work in significant numbers).

Here, Plaintiff asserts the ALJ improperly used mail clerk positions as evidence, because they were omitted by the VE due to Plaintiff's standing and walking limitations. Pl.'s Br., p. 20. Plaintiff also argues the ALJ failed to reduce the number of parking lot

attendant positions as agreed during the second hearing, and that the only properly-cited job, information clerk, is a sedentary level position. Id. Thus, Plaintiff argues, the ALJ should have used the medical-vocational guidelines ("Grids") at the sedentary level, which would have resulted in a conclusion that Plaintiff is disabled. Id.

Although the ALJ did not omit the mail clerk jobs or reduce the number of parking attendant jobs, these errors were harmless because even with such reductions there remained nearly two million informational clerk jobs, of which 3704 were in Georgia, as well as approximately 65,000 parking attendant jobs, more than 800 of which were in Georgia. R. 27, 49. Thus, the ALJ articulated specific positions in sufficient numbers to support his finding that substantial jobs exist that Plaintiff can perform. Allen, 816 F.2d at 602; Brooks, 133 F. App'x at 671.

As to Plaintiff's assertion that the ALJ should have used the Grids at the sedentary level, the ALJ addressed and rejected this argument in his RFC assessment, see supra Part III.A.3. R. 25. Furthermore, the ALJ was not required to use the Grids at the sedentary level simply because the VE identified sedentary jobs Plaintiff could perform, since his finding that Plaintiff could lift up to thirty pounds supported an RFC for light work. See 20 C.F.R. § 416.967(b) (light work involves lifting no more than twenty pounds and can involve sitting most of the time with some pushing and pulling of arm or leg controls). As medium work requires lifting up to fifty pounds, Plaintiff's lifting ability was between light and medium work, meaning he could also perform jobs identified at the sedentary level. See 20 C.F.R. § 416.967(b) & (c). Applying the Grids, an individual closely approaching advanced age, with a high school education, no transferable skills, and who can perform

either medium or light work, is "Not disabled." See 20 C.F.R. Pt. 404, Sub. P, Appx. 2, §§ 202.13, 202.14, 203.21, 203.22.

However, because Plaintiff did not fit the criteria of a particular Grid rule, the ALJ properly relied on the VE's testimony to determine that Plaintiff could perform other work. See Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996). As stated above, even excluding those positions that were improperly cited, the VE identified approximately two million jobs Plaintiff could perform in the national economy. R. 27, 44-45, 49. The burden thus fell back on Plaintiff to show that he could not perform such work, which he failed to do. Jones, 190 F.3d at 1228. Because the ALJ properly relied on the VE's testimony and articulated specific jobs Plaintiff can perform in the national economy, the Commissioner met her burden at step five and this issue provides no basis for remand.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 22nd day of January, 2014, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE